## A98A1643. BENSON v. THE STATE.
### (503 SE2d 316)

BLACKBURN, Judge.

Kim D. Benson appeals from his convictions of armed robbery and possession of a firearm during the commission of a felony, contending that the trial court erred in allowing certain evidence and that there was insufficient evidence to support his convictions. For the reasons discussed below, we affirm.

1. On appeal of a criminal conviction, the evidence must be viewed in the light most favorable to support the verdict, and the defendant no longer enjoys a presumption of innocence. Moreover, an appellate court determines the sufficiency of the evidence and does not weigh the evidence or determine witness credibility. The standard on appeal is whether the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that the defendant was guilty of the charged offense. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Lester v. State*, 226 Ga. App. 373, 376 (2) (487 SE2d 25) (1997).

The evidence shows that Benson entered the lobby of a Shoney's Inn shortly after 11:00 p.m. on December 26, 1994. He asked the clerk on duty, Jeffrey Dewberry, about renting a hotel room. Dewberry handed Benson a registration card, and Benson began filling it out. After a few minutes, another individual, identified as Patrick Antonio Ceasar, Benson's co-defendant, entered the lobby and began talking with Benson. Benson said he left his wallet in his car and asked Ceasar to go get it. Ceasar left the lobby but returned shortly thereafter and said he could not find the wallet. Benson and Ceasar then both left the lobby. About a minute later, the two men returned to the lobby. Benson showed Dewberry a gun in his hand. While Ceasar acted as a lookout, Benson took money from the hotel registration desk and lockbox. The two men then left, telling Dewberry to remain in the bathroom for ten minutes. Benson's fingerprints were found on the registration card. Both Dewberry and Brown, another clerk, positively identified co-defendant Ceasar from a photographic lineup.

Dewberry positively identified Benson as the gunman at trial. There was also testimony that Benson's fingerprints were found on

the registration card the gunman had filled out.[1] Dewberry further testified that he secured the registration card after the robbery and turned it over to the police.

Under these circumstances, there was ample evidence from which the jury could have found that Benson was guilty beyond a reasonable doubt of the offenses charged.

2. Benson contends that the trial court erred in allowing the State to introduce the registration card into evidence, arguing that the State failed to show a proper chain of custody. However, "[t]here is no necessity of establishing a chain of custody where the evidence sought to be admitted is a distinct physical object that can be identified and differentiated by the senses on observation." (Punctuation omitted.) *Ramey v. State*, 238 Ga. 111, 113 (4) (230 SE2d 891) (1976). Dewberry testified that the registration card entered into evidence was the same one that had been filled out by Benson and that he had turned over to the police. He also testified that the card was in substantially the same condition as when he gave it to the police.

Moreover, even if proof of chain of custody was required, that requirement was satisfied. Myron Mills, the police fingerprint analyst who identified Benson's fingerprints on the card, testified that he personally took possession of the card at the scene of the crime. He testified that another officer, Detective Worth, who had arrived at the scene first, pointed out the card on the hotel counter. Worth then sealed the card in a plastic bag and handed it to Mills. Mills personally performed a chemical test which revealed several latent finger-

---

[1] In her appellate brief, Benson's attorney states that "[t]he *only* evidence offered during this trial that *in any way* implicates [Benson] is the fact that similar fingerprints to his were found on a folio in a public place where a number of people had been before and after the robbery. . . . *Mr. Benson was not identified by either eye witness in a photo lineup or in court.*" (Emphasis supplied.) In another section of her brief, Benson's attorney states that "neither of the eye witnesses identified Mr. Benson in court." These statements are blatant misrepresentations, as Dewberry positively identified Benson at trial. We note that the transcript of Dewberry's testimony was only 39 double-spaced pages long. Three of those pages consisted of Dewberry's in-court identification of Benson and Ceasar. Thus, it is difficult to believe that the attorney's misrepresentations were anything other than intentional. At the very least, the making of such affirmative and material representations without even bothering to check the transcript constitutes wilful negligence and a violation of the attorney's affirmative obligation to accurately state the facts. See Court of Appeals Rule 27 (a) (1); (c) (3) (i).

Court of Appeals Rule 7 authorizes this Court, upon a finding of contempt, to impose a fine of up to $1,000 upon the offending party. This Court is generally reluctant to impose fines upon criminal defendants or their attorneys, in order to avoid discouraging vigorous prosecution of criminal appeals. However, this reluctance should not be interpreted as a sign that attorneys may mislead this Court without fear of consequences merely because the case is a criminal appeal. Misrepresentation of material facts is perhaps the clearest example of conduct which constitutes contempt in an appellate proceeding. A requirement that attorneys refrain from making such blatant misrepresentations should in no way prohibit conscientious criminal defense attorneys from zealously representing their clients.

prints on the card. Mills then delivered the card to Alfreddie Pryor, a fingerprint examiner at the state crime lab. Pryor testified that he compared the fingerprints on the card to prints in the state files, and that a set of prints on the card matched Benson's prints. Mills also testified that he made a photostatic copy of the latent prints on the registration card, and matched those prints with prints taken from Benson when he was arrested. Therefore, even if the State were required to prove chain of custody of the registration card, it met this requirement.

3. Benson also contends that the trial court erred in allowing a witness to testify that photographic lineup pictures of Benson were taken from previous arrests, thereby placing his character into evidence. However, Benson failed to object to this testimony when it was offered at trial, thereby waiving this issue for appeal. *Cammon v. State*, 227 Ga. App. 774, 775 (2) (490 SE2d 529) (1997).

*Judgment affirmed. McMurray, P. J., and Eldridge, J., concur.*

DECIDED JUNE 22, 1998.

*Sharon S. Whitwell*, for appellant.
*Tommy K. Floyd, District Attorney, James L. Wright III, Assistant District Attorney*, for appellee.