## S01A1413. LOPEZ v. THE STATE.
### (558 SE2d 698)

HINES, Justice.

Eleazar Lopez appeals his conviction for malice murder in connection with the fatal bludgeoning and stabbing of Juan Alvarez-Crispin.[1] Lopez challenges the conviction on the bases that he was not properly and adequately advised of his consular rights pursuant to Article 36 of the Vienna Convention;[2] that he was denied his constitutional right to testify at trial; and that he did not receive effective assistance of trial counsel. Finding the challenges to be without merit, we affirm.

On October 9, 1999, at approximately 10:05 p.m., the Madison County Sheriff's Department received a report of a man covered with blood walking in the roadway near a mobile home park. When deputies first arrived on the scene they did not see anyone, but they then received a dispatch that the man had gone to Lot 16. A Hispanic male, later identified as Lopez, rode a bicycle down a nearby hill and briefly spoke with the deputies. They then saw what appeared to be blood in the yard and on the door of the mobile home on Lot 16. They knocked on the door but got no response. The deputies identified themselves and then entered the unlocked door of the mobile home on Lot 16. They found Juan Alvarez-Crispin lying on the living room floor, near an automobile tire jack covered with blood. There was blood spatter on the victim's boots, on the wall behind his head, on curtains, and on the television screen. The victim had multiple lacerations on his forehead, nose, and cheek, partially caving in his face; his skull was fractured and his brain was exposed. The injuries were consistent with having been inflicted by the tire jack. The victim also

---

[1] The murder occurred on October 9, 1999. On April 26, 2000, a Madison County grand jury indicted Lopez for malice murder. He was tried before a jury June 27-28, 2000, and was found guilty. On June 30, 2000, Lopez was sentenced to life imprisonment. A notice of appeal was filed on July 6, 2000. On September 12, 2000, new appellate counsel was appointed. An appeal (S01A0048) was docketed in this Court on September 20, 2000, but, on October 20, 2000, the appeal was stricken from the docket and the case remanded to the trial court for hearing and resolution of Lopez's claim of ineffective assistance of trial counsel. New appellate counsel filed an entry of appearance on March 7, 2001, and on that day filed a motion for new trial on behalf of Lopez. The motion for new trial was denied on May 4, 2001. A notice of appeal was filed on May 30, 2001, and the appeal was docketed in this Court on June 21, 2001. The case was submitted for decision on August 13, 2001.

[2] The Vienna Convention on Consular Relations, April 24, 1963, 21 U. S. T. 77, 596 U. N. T. S. 261, 1967 WL 18349 (ratified November 24, 1969).

sustained six stab wounds to his chest and numerous defensive wounds to his hands and arms. The cause of death was blunt force injuries to the head and stab wounds to the chest.

Shortly thereafter, police located Lopez, who was "trying to get away from the area" at a mobile home park in Clarke County. Lopez was no longer wearing what he had been wearing when he spoke with the deputies, but he was carrying a plastic bag containing the shirt he had earlier worn. Lopez was arrested and taken to the Madison County Sheriff's Office. An officer, fluent in Spanish, acted as a translator and Lopez was advised of his *Miranda* rights in English and Spanish. Lopez executed a waiver of rights and gave a statement to police.

Lopez related that he and the victim had been drinking all day at the mobile home at Lot 16; several women, a man named Felix, and another man stopped by, and they drank beer together; the visitors left around 9:30 p.m.; Lopez told the victim that he was going to bed around 10:30 p.m.; Lopez and the victim continued to drink and had a discussion concerning $20 that Lopez had given the victim for gas; Lopez asked for the money back, and the victim called him names; Lopez saw the victim go to his car and retrieve a tire jack; the victim attacked Lopez with the tire jack, hitting him in the head; Lopez defended himself with his hands and took the tire jack away from the victim; Lopez hit the victim about ten times in the head and chest, knocking him to the floor; he then got a knife from the kitchen and stabbed the victim at least four times; Lopez left the mobile home, returned, washed his hands, changed his shirt, and left again; when Lopez saw police, he left on his bicycle.

Around 10:00 p.m., Lopez was seen near the murder scene, standing with a bicycle by the side of the road; he had blood on his shirt and hands.

At trial, a resident of the mobile home park nicknamed "Taz" testified that he had gone to Lot 16 to look after his intoxicated friend Felix. He there saw Lopez and the victim drinking. At some point, Taz observed Lopez exit the mobile home with a knife in his hand, stating that he was going to kill the victim. Two women standing nearby grabbed Lopez's arms, and Taz persuaded Lopez to give him the knife. Taz took the knife to Felix's mobile home, which was located next door.

The police recovered three knives at the scene: a blood-stained one found in the living room of the mobile home at Lot 16; one found in the yard; and another found in the mobile home at Lot 17.

1. The evidence was sufficient to enable a rational trier of fact to find Lopez guilty beyond a reasonable doubt of the malice murder of Juan Alvarez-Crispin. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Lopez, a Mexican national, contends that his custodial statement should have been suppressed and that he is entitled to a new trial because he was not properly and adequately advised of his right to contact the Mexican consulate pursuant to Article 36 of the Vienna Convention.[3]

But in general, international treaties do not create individual rights which can be privately enforced in court proceedings. *Villegas v. State*, 273 Ga. 824, 826 (6) (546 SE2d 504) (2001). What is more, assuming arguendo that the Vienna Convention is an exception to that general rule, nothing in its text requires the suppression of evidence. Id. By its terms it does not require application of the exclusionary rule, and such a judicially-created remedy cannot be imposed absent a violation of a constitutional right. Id. at 827 (6). Any rights created by the Vienna Convention do not rise to the level of a constitutional right protected by the judicially-created remedies sought by Lopez. Id.; *United States v. Page*, 232 F3d 536, 540-541 (1) (6th Cir. 2000). In addition, Lopez cannot show that any alleged violation of the Vienna Convention had a prejudicial effect on his trial.[4] Id.

3. Lopez contends that he was denied his constitutional right to testify on his behalf at trial. In support, he cites his testimony at the hearing on his motion for new trial that he was not advised of his right to testify in court and that he wanted to tell his side of the story. But Lopez's trial counsel testified that he spoke extensively with Lopez about the trial proceedings, Lopez's rights at trial, and the defense trial strategy; that he talked "about [Lopez's right to testify in court] a lot"; that while Lopez initially wanted to tell his story and that they practiced his doing so,[5] after hearing Lopez's version of events,[6] counsel advised him not to testify; and that Lopez ultimately agreed. See *Mobley v. State*, 264 Ga. 854, 855 (2) (452 SE2d 500)

---

[3] Article 36 (1) (b) provides:

[I]f [an arrested foreign national] so requests, the competent authorities of the receiving State [here, the United States] shall, without delay, inform the consular post of the sending State [here, Mexico] if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall also be forwarded by the said authorities without delay. The said authorities shall inform the person concerned without delay of his rights under this sub-paragraph.

[4] The Madison County sheriff testified that he notified Lopez of his right to contact the Mexican consulate approximately two days after his arrest, but that Lopez did not request to do so. Lopez himself acknowledged that he was advised of his consular rights, albeit he claimed he was so advised only 15 days prior to trial, and it is undisputed that Lopez did consult with a consular official prior to trial.

[5] Counsel reviewed Lopez's expected testimony along with a representative from the Mexican consulate.

[6] Counsel asked Lopez why he stabbed the victim after he had bludgeoned him to death, and Lopez explained, "[Y]es, I finish what I start."

(1995). It was for the trial court to assess the credibility of the witnesses, including trial counsel, and accordingly make its determinations. *Byrd v. State*, 274 Ga. 58, 61 (2) (548 SE2d 2) (2001); *Gilliam v. State*, 268 Ga. 690, 692 (3) (492 SE2d 185) (1997).

4. Finally, Lopez claims that he did not receive effective assistance of counsel during his trial because counsel failed to search for and interview a witness named "Mr. Guadalupe" who would have testified that the decedent was the aggressor; counsel made the decision not to permit him to testify although he desired to do so; and counsel failed to explain to him his constitutional rights at trial, the trial process, and the defense strategy. But, in order for Lopez to prevail on his claim of ineffectiveness, he "must show both that his attorney's performance was deficient and that the 'deficiency prejudiced him such that a reasonable probability exists that, but for the attorney's errors, the outcome of his trial would have been different.'" *Byrd v. State*, supra at 60 (2), quoting *Moody v. State,* 273 Ga. 24, 27 (5) (537 SE2d 666) (2000); *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). This Lopez cannot do.

Counsel testified that he sought out witnesses to assist Lopez in his claim of self-defense; counsel interviewed the State's witnesses and others in and around the mobile home park where the murder occurred but no one substantiated that the decedent threatened Lopez first; and counsel had not heard of "Mr. Guadalupe" prior to the motion for new trial hearing. As noted in Division 3, counsel further testified that he discussed at length the judicial process with Lopez including Lopez's right to testify and his other trial rights; they discussed strategy and were in agreement that Lopez should not take the stand because his testimony was damaging. Again, the question of the witnesses' credibility at the hearing, including that of Lopez and trial counsel, and the resolution of any conflict in the testimony was for the trial court. *Byrd v. State*, supra at 61 (2); *Gilliam v. State*, supra at 692 (3). And the record supports the trial court's determinations. *Mobley v. State*, supra at 856 (2).

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 14, 2002.

*Ramon J. Fajardo*, for appellant.

*Robert W. Lavender, District Attorney, Thurbert E. Baker, Attorney General, Ruth M. Bebko, Assistant Attorney General,* for appellee.