## A06A1918. BANEGAS v. THE STATE.
(641 SE2d 593)

RUFFIN, Judge.

A jury found Wilmer Banegas guilty of involuntary manslaughter in the shooting death of Julia Zelaya. Banegas appeals, asserting that the trial court erred in: admitting hearsay evidence; failing to suppress his statement to police; refusing to allow testimony or a jury instruction that his rights under the Vienna Convention on Consular Affairs were violated; denying his challenge to a prospective juror; failing to grant a mistrial; and allowing the State to make improper arguments.[1] For reasons that follow, we affirm.

"On appeal from a criminal conviction, we view the evidence in a light most favorable to the verdict and do not presume that the defendant is innocent."[2] Viewed in this manner, the record shows that Banegas and Zelaya lived together. On June 14, 2003, Zelaya was shot in the head and killed while lying in her bed. Soon thereafter, Banegas went to the home of Armando and Nely Torres and told them that Zelaya had been shot while the two struggled over a gun. The Torreses called police, and Banegas was taken into custody. After being advised of his *Miranda* rights by a Spanish-speaking police officer, Banegas, who is a native of Honduras, made a statement in which he claimed that the gun accidentally discharged while he was handing it to Zelaya.

At trial, the leasing agent for the apartment complex in which Banegas and Zelaya lived testified that, approximately one month before her death, Zelaya told the leasing agent that she wanted to leave Banegas because he was jealous and hit her and her young daughter. Zelaya stated that she was scared of Banegas and afraid that if she left him, he would kill her.

The jury found Banegas guilty of two counts of involuntary manslaughter and two counts of reckless conduct. These were merged into one count of involuntary manslaughter for purposes of sentencing, and Banegas was sentenced to confinement for ten years.

1. Banegas alleges that the trial court erred in permitting the leasing agent to testify about Zelaya's statement that Banegas had hit her and she was afraid he might kill her if she tried to leave him.

---

[1] The State moved to dismiss Banegas's appeal because it was not timely filed. Banegas's appeal was docketed on May 19, 2006 and his brief was not filed until June 28, 2006. See Court of Appeals Rule 23 (a) (appellant's brief "shall be filed within 20 days after the appeal is docketed"). However, "[b]ecause the fault appears to lie with [Banegas's] counsel rather than with [Banegas]," we elect not to dismiss the appeal under these circumstances. See *Walker v. State*, 280 Ga. App. 393, 394 (1) (634 SE2d 177) (2006).

[2] *Giddens v. State*, 276 Ga. App. 353, 354 (1) (623 SE2d 204) (2005).

Banegas argues that this testimony was inadmissible hearsay. Testimony about prior difficulties between the defendant and victim is admissible at trial to show the nature of their relationship and to demonstrate motive, intent, or bent of mind of the defendant in committing the act.[3] We review the trial court's decision to admit hearsay testimony about such prior difficulties for abuse of discretion.[4]

Hearsay testimony is admissible under the necessity exception when it is both necessary and accompanied by particular guarantees of trustworthiness.[5] In order to determine necessity, the trial court must consider whether "the declarant is unavailable, the statement is relevant to a material fact, and the statement is more probative of that fact than other evidence which may be offered."[6] Trustworthiness is established "if, under the totality of the circumstances, the declaration is coupled with circumstances which attribute verity to it."[7] Here, where Zelaya was unavailable, her statements were relevant to show Banegas's motive for shooting her, and she made the statements shortly before her death to one to whom she had no reason to lie and who had no reason to misrepresent what was said, we cannot say that the trial court abused its discretion in admitting the testimony.[8] Moreover, as Banegas was found guilty of involuntary manslaughter rather than murder, the admission of this testimony appears to have been harmless.

2. In three related enumerations of error, Banegas contends that his right under the Vienna Convention on Consular Affairs to speak with the Honduran consulate was violated. According to Banegas, the arresting officer was required to inform him of this right, and his failure to do so warrants suppression. Banegas also argues that the trial court should have permitted him to cross-examine police about their failure to notify him of his right under the Vienna Convention, and should have instructed the jury about the rights of foreign nationals under the Vienna Convention. The same argument, however, was rejected by the Supreme Court of Georgia in *Lopez v. State*,[9] in which it held that "[a]ny rights created by the Vienna Convention do not rise to the level of a constitutional right protected by the judicially-created remedies sought by [the defendant]." Thus, we conclude that these enumerations of error lack merit.

---

[3] See *Tuff v. State*, 278 Ga. 91, 92 (2) (597 SE2d 328) (2004).

[4] See id. at 93.

[5] See *Grimes v. State*, 280 Ga. 363, 366 (5) (628 SE2d 580) (2006).

[6] Id.

[7] (Punctuation omitted.) Id.

[8] Id.

[9] 274 Ga. 663, 665 (2) (558 SE2d 698) (2002).

3. Banegas asserts that the trial court erred in denying his challenge to a prospective juror named Watson. During voir dire, Watson testified that he was employed by the Gwinnett County Fire Department, had worked with police and the district attorney's office in investigations, and is a friend of the chief assistant district attorney. Banegas challenged Watson for cause, arguing that, because of his investigative role with the fire department, he was the equivalent of a sworn law enforcement officer. The challenge was denied by the trial court.

We will not overturn a trial court's refusal to strike a juror for cause unless there has been a manifest abuse of discretion.[10] A person employed in law enforcement is not automatically subject to dismissal for cause unless he is "a full-time sworn police officer with arrest powers."[11] Banegas points to no evidence that Watson satisfied these criteria. Although Watson stated that as a firefighter he had worked with the police and district attorney's office on "numerous different types of incidents," such as looking for a body in a well and providing information to an arson investigator, he also testified he could be impartial and would not give deference to the testimony of police officers. He had no knowledge of the incident for which Banegas was on trial. Because as a firefighter he was not automatically disqualified from jury service, and because he stated that he could be fair and impartial, the trial court did not abuse its discretion in refusing to strike Watson for cause.[12]

4. Banegas contends that the trial court erred in denying his motion for a mistrial after a police officer testified that Banegas was an illegal alien. The State asked, "[i]s it standard operating procedure for you to call a consulate to tell them that you have one of their citizens in your custody?" The police officer responded, "[n]o, especially when they are not a legal citizen or a guest of the United States." Banegas moved for a mistrial, arguing that the officer's statement violated a pre-trial ruling excluding evidence of immigration status. The trial court, while refusing to grant a mistrial, advised the jury that immigration status was not an issue in the trial and that they were to completely disregard any comments about immigration status, and asked the jury if they were in fact able to disregard such comments. Banegas renewed his motion for a mistrial after the trial court gave the curative instructions.

[10] *Chavarria v. State*, 248 Ga. App. 398 (1) (546 SE2d 811) (2001).

[11] *Robinson v. State*, 278 Ga. 836, 838 (4) (607 SE2d 559) (2005).

[12] See *Martinez v. State*, 259 Ga. App. 402, 403-404 (2) (577 SE2d 82) (2003); *Mobley v. State*, 230 Ga. App. 120, 121 (2) (495 SE2d 598) (1998).

We review the denial of a motion for a mistrial for abuse of discretion, and "will reverse only if a mistrial is essential to the preservation of the defendant's right to a fair trial."[13] Here, the brief reference to Banegas's immigration status was not solicited by the State and the trial court immediately instructed the jury to disregard it. Under these circumstances, the trial court did not abuse its discretion in denying the motion for mistrial.[14]

5. Banegas also contends that "[t]he State improperly shifted the burden of proof when it tried to explain missing witnesses by telling the jury that the defense has subpoena power." But Banegas provides neither a citation to the record nor even a description of where this alleged burden-shifting occurred. Thus, we find that Banegas has abandoned this argument.[15]

6. Banegas contends that in closing the State improperly argued the victim's age and family status. However, Banegas did not object to the State's arguments at trial; therefore, he has waived any objection on appeal.[16]

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED JANUARY 31, 2007.

*Edwin J. Wilson*, for appellant.
*Daniel J. Porter, District Attorney, Niria D. Baggett, Assistant District Attorney*, for appellee.

---

[13] *Williams v. State*, 248 Ga. App. 111, 113 (2) (545 SE2d 669) (2001).

[14] See *Lighten v. State*, 259 Ga. App. 280, 285 (4) (576 SE2d 658) (2003).

[15] See Court of Appeals Rule 25 (c) (2) and (3) (i); *Smith v. State*, 278 Ga. App. 315, 323 (9) (628 SE2d 722) (2006).

[16] See *Mullins v. State*, 270 Ga. 450, 450-451 (2) (511 SE2d 165) (1999); *Ward v. State*, 238 Ga. App. 540, 542 (2) (519 SE2d 304) (1999).