A00A0382. WILLIAMS v. THE STATE.
(537 SE2d 125)

RUFFIN, Judge.

Roosevelt Williams was convicted of two counts of burglary. On appeal, he contends the evidence was insufficient to support the convictions. He also claims the trial court erroneously denied his motion for mistrial and overruled his objection to the prosecutor's closing argument. For reasons discussed below, we affirm.

The relevant facts follow. Two homes in Lawrenceville were burglarized on February 19, 1998. Rachel Reese, the owner of the house at 191 Forest Ridge Court, testified that she returned home at about 6:15 p.m. and discovered several items missing, including a stereo, telephone, answering machine, three guns, ammunition, jewelry, a coin collection, a comforter cover, and some pillowcases. It appeared that someone had broken the bottom of a storm window and used a long tool to reach through and unlock the window. Eloy Saenz, who lived at 205 Forest Place, testified that several items were stolen

from his house that day, including a Dallas Cowboys jacket, two pairs of pants, and some papers.

Later that night, police responded to a burglar alarm at a nearby church. The police used a search dog to try to track the intruder. The dog picked up a scent behind the church and led its handler, Officer Russell, through a path in the woods toward the Forest Place neighborhood. Russell subsequently led the dog back to the church and had it search the woods for any hidden items with human scent on them. The dog located many of the items stolen from 191 Forest Ridge Court in the woods, about 50 feet from the path it had led Russell on earlier. Russell testified, however, that if the stolen items had the scent of the individual the dog was tracking, the dog would have led him to the items while tracking the individual.

Officer D. P. Taylor, who was in his car on Forest Place, testified that he saw a young man, later identified as Edwin Snowden, run across the road and disappear into the darkness near some apartments. Taylor called out to Snowden as he was attempting to go into his house at 56 Forest Place. When Snowden failed to respond, Taylor placed him under arrest. Officer Ashley arrived on the scene and interviewed Snowden's mother, who asked if any money had been taken in the burglaries. When Ashley said yes, Ms. Snowden went back into the house and brought out her other son Roderick, who told Ashley that he had purchased some coins from Roosevelt Williams. He showed the coins to Ashley, and they were later identified as some of the coins stolen from Reese's house.

Ashley and other officers went to Williams' home and spoke with him and his mother. Williams denied selling any coins to Roderick Snowden, and he and his mother consented to a search of the home. As the officers started to search his closet, Williams told them that he collected coins and produced a bag of coins from the closet. Although he told the officers that he did not have any other coins, the officers found a box in the closet which contained a cloth bag filled with coins. The bag had Reese's husband's name and address written on it. Reese identified the bag and coins at trial.

Officer Taylor, who had positioned himself behind Williams' duplex in case someone tried to run away, testified that there was an open hole in the rear wall leading to a crawl space underneath Williams' apartment. Taylor looked inside the opening and found a long screwdriver just inside the crawl space. Taylor then noticed another hole in the wall, which opened onto the basement of the adjacent unit. Taylor looked inside this hole and saw a blue jacket lying on the ground underneath the opening. Inside the jacket pocket was a pay stub with Saenz's name on it. Saenz identified the jacket as the one stolen from his house. Officer Ashley testified that the screwdriver found in Williams' crawl space was long enough to have been used to

open Reese's window, but that a regular-sized screwdriver would not have been sufficient.

Roderick Snowden testified that he purchased the stolen coins from Williams. Williams, however, denied selling the coins to Snowden. To the contrary, he testified that Snowden sold him the coins that were discovered in his closet by the police. He said Snowden told him that he had found the coins in the woods.

1. On appeal of a criminal conviction, we view the evidence in the light most favorable to support the verdict, and the defendant is no longer entitled to a presumption of innocence. We do not weigh the evidence or determine witness credibility, but simply determine whether the evidence was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of the crimes charged.[1]

As we have previously noted,

> [w]here a theft . . . is proven, the recent unexplained or inadequately explained possession of the stolen property by the defendant creates an inference or presumption of fact sufficient to convict. Whether or not a defendant's explanation is satisfactory or reasonable is a question for the jury.[2]

The evidence was clearly sufficient to support Williams' conviction of the burglary of Reese's home, as Williams was found in possession of coins stolen during the burglary. Although Williams claimed that he purchased the coins from Roderick Snowden, Snowden contradicted this testimony, claiming that he purchased some of the stolen coins from Williams. While Williams contends that his testimony is more credible than Snowden's, the credibility of witnesses is a matter for the jury, not for this Court. Moreover, the fact that Williams produced a bag of coins for the officers and falsely stated that he had no other coins supports an inference that he was trying to keep the officers from discovering the stolen coins hidden in a box in his closet. The jury could have concluded that Williams' attempt to deceive the officers showed a consciousness of guilt, thus providing a further basis for believing Snowden instead of Williams.[3]

---

[1] *Benson v. State*, 233 Ga. App. 58 (1) (503 SE2d 316) (1998). In its appellate brief, the State makes no argument whatsoever as to how the evidence was sufficient to support the convictions, but simply states that "[t]he jury was entitled to choose which witnesses they believed and which witnesses they did not." We do not believe that this "argument" satisfactorily discharges the State's duty to file a response brief in all criminal appeals, as required by Court of Appeals Rule 13.

[2] (Citation omitted.) *London v. State*, 235 Ga. App. 30, 32 (1) (c) (508 SE2d 247) (1998).

[3] See *Moody v. State*, 232 Ga. App. 499, 502 (1) (502 SE2d 323) (1998) (defendant's actions during search showed consciousness of guilt and intent to exercise control over contraband).

With respect to the burglary of Saenz's residence, the jacket stolen during the burglary was not found in Williams' direct possession, but stuffed through a hole in the adjacent duplex unit. Nevertheless, when the evidence is considered in its totality, we believe the jury was authorized to conclude that Williams was guilty of both burglaries. The burglaries were committed on the same day, in the same general area. In both cases, the burglar gained entry into the house through a window and left the window open after departing. With respect to the Reese burglary, entry was apparently gained through use of a long pry bar. If, as discussed above, the jury believed that Williams committed the burglary, it could reasonably have concluded that he utilized the long screwdriver and disposed of it by hiding it in the crawl space underneath the apartment. The fact that the stolen jacket was found in close proximity to the screwdriver — both were stuffed in adjacent holes in the same wall — strongly suggests that they were hidden by the same person. Although Williams argues that another person could have hidden the jacket, the jury could have found the coincidence of such a hypothesis too extreme to be reasonable, given Williams' involvement in the Reese burglary. When all of the evidence is considered together, and not in isolation, the jury could conclude that the only reasonable hypothesis was that the same person committed both burglaries, and that person was Williams.[4]

2. Williams contends the trial court erred in denying his motion for mistrial and his motion for new trial based on an improper question by the prosecutor. This contention is without merit.

During Williams' cross-examination, the prosecutor asked the following:

Q. Did Detective Gentry interview you about these coins?
A. Yes, she did.
Q. Did you tell her about where you had gotten these coins from?

At this point, Williams' counsel objected that the question improperly commented on Williams' exercise of his right to remain silent. Because it was 5:00, the court excused the jury for the day and took up the issue with counsel. In making an offer of proof, counsel stated that Williams had been advised of his *Miranda* rights; that he was asked if he knew anything about the burglaries and replied that he did not; that he was then shown the bag of coins by Detective Gentry; and that he then said he did not want to make a statement. The

---

[4] See *Harris v. State*, 222 Ga. App. 56, 58 (2) (473 SE2d 229) (1996) (whether hypothesis is reasonable is question for jury).

judge withheld a ruling on the objection and went on to hold a charge conference with the attorneys.

When court reconvened the next morning, Williams' attorney moved for a mistrial based on the prosecutor's question. The court refused to grant a mistrial, but informed the jury that the question was improper and instructed it to disregard the question. He asked if any of the jurors could not do so, and none of the jurors responded. Williams' attorney then renewed his mistrial motion.

The grant or denial of a motion for mistrial is within the sound discretion of the trial court.[5] We will not interfere with the trial court's exercise of that discretion unless "it is clear that a mistrial is essential to the preservation of the right to a fair trial."[6] "Improper reference to a defendant's silence . . . does not automatically require reversal."[7] In this case, the witness never responded to the prosecutor's question, so there was no testimony that Williams had previously invoked his right to remain silent. Moreover, the court gave curative instructions and specifically asked whether the jurors could disregard the question.[8] Under these circumstances, the trial court did not abuse its discretion in denying the mistrial motion or in refusing to grant a new trial.[9]

3. During closing argument, the prosecutor argued that

> the law allows you to presume that [Williams'] recent possession of these stolen items, from that you can infer his guilt. There has been no reasonable explanation. If you took each one of these things individually, if you say okay, all we found on him was coins, and ignore the jacket, ignore Roderick Snowden's testimony, ignore this long convenient pry tool that was found in his crawl space, okay, that would be amazing. We probably wouldn't be here if we had just found. . . .

Williams' attorney then objected that the argument was "burden

---

[5] *Baker v. State*, 238 Ga. App. 285, 288 (2) (518 SE2d 455) (1999).

[6] *Dowdy v. State*, 209 Ga. App. 95-96 (1) (432 SE2d 827) (1993).

[7] (Punctuation omitted.) *Sims v. State*, 213 Ga. App. 151, 152 (2) (444 SE2d 121) (1994).

[8] Although Williams complains that the curative instructions were not given until the next morning, he did not request curative instructions or move for a mistrial until the next morning. At the time the question was asked, his attorney simply objected to the question, and the trial court ultimately sustained this objection. Thus, Williams contributed to or acquiesced in any delay in giving the curative instructions. Moreover, it is questionable whether the mistrial motion was in fact timely, as it was not made contemporaneously with the objectionable question. See *Stephens v. State*, 232 Ga. App. 738, 739 (2) (503 SE2d 643) (1998). Nevertheless, it is not necessary to address this issue.

[9] See *Zachery v. State*, 158 Ga. App. 448, 449 (2) (280 SE2d 860) (1981) (affirming denial of mistrial motion where objectionable question not answered and curative instructions given).

shifting," and that Williams was not in possession of the jacket and screwdriver. The court overruled the objection, stating that counsel has "wide latitude" in closing argument.

"In closing arguments each side is permitted to make any argument which is reasonably suggested by the evidence."[10] The prosecutor's argument was essentially a plea that the jury consider the evidence in its totality, and not in isolation. Although Williams could certainly argue that it was a mere coincidence that the screwdriver was found hidden in his crawl space and the stolen jacket was found hidden in the adjacent apartment, the prosecutor was entitled to urge the jury to consider the totality of the evidence in determining whether Williams was guilty of the offenses charged. Thus, the trial court did not err in overruling Williams' objection.

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED JULY 7, 2000 —
RECONSIDERATION DENIED JULY 21, 2000.

*Peevy & Lancaster, Douglas N. Fox,* for appellant.
*Daniel J. Porter, District Attorney, Dawn H. Taylor, Frank Ilardi, Assistant District Attorneys,* for appellee.

---

[10] *Durden v. State,* 250 Ga. 325, 329-330 (6) (297 SE2d 237) (1982).