## A03A1134. GEORGE v. THE STATE.
### (588 SE2d 312)

JOHNSON, Presiding Judge.

Jeffrey George was indicted for aggravated battery, aggravated assault, and possession of a destructive device. He pled not guilty to the charges, and was tried before a jury. At trial, the state presented evidence that George confronted the victim with a beer bottle that contained lacquer thinner and had a rag stuck in it, that he tried to light the rag, that lacquer thinner splashed on the victim, and that he then used a lighter to ignite the thinner on the victim's shirt. The jury acquitted George of aggravated battery, but found him guilty of aggravated assault and possession of a destructive device. The trial judge sentenced George to 15 years in confinement.

George moved for a new trial, contending that the court erred in

failing to grant a mistrial after improper comments on his right to silence and in denying his *Batson*[1] challenge to the state's use of its peremptory strikes during jury selection. The trial court denied the motion, and George appeals from that denial. Although we find no error in the trial court's refusal of a mistrial after reference to George's exercise of his right to silence, we do find error in the trial court's denial of George's *Batson* challenge. We therefore reverse the judgment of conviction and remand the case for a new trial.

1. George claims that twice during the testimony of a fire investigator there were improper comments about George's exercise of his right to remain silent. The claim is without merit.

The first alleged comment occurred when the prosecutor asked the investigator if he had read George his rights before arresting him. The investigator said he had read George his rights. At that point George's attorney objected and moved for a mistrial, speculating that the investigator was going to testify that George had chosen to remain silent after having been read his rights. The trial court denied the motion. We find that the court's ruling was correct because, in spite of the speculation of George's attorney, at that juncture in the trial there simply was no testimony that George had invoked his right to silence.[2]

During subsequent testimony, however, there was an improper comment by the investigator. After he testified about having interviewed the victim, the prosecutor asked the investigator if he had interviewed anyone else. The investigator responded that he had tried to interview George but that George refused to give a statement. George's attorney again objected and moved for a mistrial. The prosecutor explained that he had not expected the investigator to testify about George, but had expected him to respond that in addition to the victim he had interviewed two fire paramedics who were present at the crime scene. The trial court denied George's mistrial motion, but instructed the jury to completely disregard the prosecutor's question and the investigator's answer. The court then asked for any juror who could not do that to raise his or her hand. None of the jurors raised a hand.

George is correct that the investigator improperly commented on his right to remain silent. "Evidence as to silence on the part of the defendant at the time of his arrest should be excluded when objected to, for he is then entitled to remain silent, and the prosecution may not use against him the fact that he stood mute or claimed his privi-

[1] *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).
[2] See *Williams v. State*, 245 Ga. App. 259, 263 (2) (537 SE2d 125) (2000) (mistrial not warranted where no testimony about defendant's silence).

lege."[3] Nevertheless, an improper comment on the defendant's silence does not necessarily require a reversal.[4] The grant or denial of a mistrial is within the trial court's sound discretion, and we will not interfere with the trial court's exercise of that discretion unless it is clear that a mistrial was essential to preserve the right to a fair trial.[5]

Here, a mistrial was not clearly essential for a fair trial. Instead, the trial judge correctly excluded the improper comment, giving the jurors a curative instruction and specifically asking them whether they could disregard the question. Under these circumstances, we find no abuse of discretion in the trial court's refusal to grant a mistrial.

2. George asserts that the trial court erred in failing to find that the state discriminated based on race and sex by using its peremptory strikes to strike four out of the five available African-American males from the jury. We agree with George that the trial court erred in finding that the state gave adequate nondiscriminatory explanations for the strikes.

The record reveals that there were seven African-American males in the jury pool, but two were struck for cause, leaving five African-American men in the jury pool before the parties' exercise of peremptory strikes. One of those men was selected to serve on the jury, three of them were struck from serving on the jury by the state, and the last one was available to serve as an alternate juror but the state struck him too.

After the jury was selected, George raised his *Batson* challenge to the state's striking of the four African-American males — jurors 10, 12, 17, and 41. The trial court asked the prosecutor to explain his strikes. The prosecutor stated that he struck juror 10 because he had an unstable job history, he smiled at the defendant but frowned at the prosecutor, and he had put his head down and seemed inattentive. The prosecutor said that he struck juror 12 because he wore an earring, he gave unclear answers to the prosecutor's questions, and the prosecutor could not establish a rapport with him. The prosecutor explained that he struck juror 17 because he had an unstable job history and said he was going to Panama City to have a good time. And the prosecutor said that he struck potential alternate juror 41 in order to reach other alternate jurors.

The trial court asked George if he had anything more to say about the matter. George's attorney noted that the prosecutor did not strike a white male who wore an earring, that he did not question

---

[3] (Citations and punctuation omitted.) *Brewer v. State*, 219 Ga. App. 16, 19 (4) (463 SE2d 906) (1995).

[4] *Williams*, supra.

[5] Id.

white jurors who were unemployed, and that during voir dire he never asked a juror to speak up or repeat an answer because the juror's answers were unclear. Defense counsel argued that the prosecutor's explanations for his strikes were merely pretextual.

The trial court found that George had made out a prima facie case of racial discrimination. But the court also found that the prosecutor's explanations were race-neutral. The court then denied the *Batson* challenge.

Because the court directed the state to explain its strikes, the preliminary question of whether George established a prima facie case of discrimination is moot and the state's explanations must be examined.[6] The reasons articulated by the prosecutor must be racially neutral and related to the particular case.[7]

> Once a prima facie case of discrimination is made, the proponent of the strike is required to set forth a race-neutral, case-related, clear and reasonably specific explanation for the exercise of its strikes. An explanation is not race-neutral if it is based on a characteristic that is peculiar to any race or on a stereotypical belief. At this point, the proponent of the strike need not proffer an explanation that is persuasive or even plausible — all that is required is an explanation that is facially race-neutral. The trial court must then determine, considering the totality of the circumstances, whether the opponent of the strikes has shown that the proponent was motivated by discriminatory intent in the exercise of his strikes. The opponent of the strikes may carry his burden of persuasion by showing that similarly situated jurors of another race were not struck or that the proponent's race-neutral reason for a strike is so implausible or fantastic that it renders the explanation pretextual.[8]

(a) We begin our examination of the prosecutor's explanations with juror 10. The first reason given by the prosecutor for striking this juror — an unstable job history — can justify the use of a peremptory strike.[9] But here, contrary to the prosecutor's claim, there is no evidence that juror 10 has an unstable job history. In fact, the prosecutor's own questioning of the juror established that at the time of voir dire the juror was employed by dairy company Parmalat, that he had been employed by Parmalat for a year, and that prior to his

---

[6] *Barnes v. State*, 269 Ga. 345, 349 (6) (496 SE2d 674) (1998).
[7] See *Chunn v. State*, 210 Ga. App. 209, 210 (2) (435 SE2d 728) (1993).
[8] (Punctuation and footnotes omitted.) *Barnes*, supra.
[9] See *Ware v. State*, 258 Ga. App. 706, 708 (2) (574 SE2d 898) (2002).

Parmalat job he had worked for Coca-Cola as a merchandiser, route salesman, and route driver. That was the totality of the evidence concerning the juror's job history, and rather than indicating instability, it demonstrates a stable employment history. Given that the evidence completely contradicts the prosecutor's characterization of the juror's job history as unstable, we can conclude only that this race-neutral reason is so implausible and fantastic as to render the explanation pretextual.

The implausibility of that explanation also reduces the persuasiveness of the prosecutor's other claims that he struck juror 10 because he smiled at the defendant and frowned at the prosecutor, and because he put his head down and seemed inattentive.[10] Since the voir dire transcript does not preserve facial expressions or actions, and because the prosecutor never attempted to question the juror about smiling or frowning or seeming inattentive, there is no support in the record for the prosecutor's bare assertions about the juror's conduct.[11] Moreover, we are troubled by the complete absence of any inquiry into whether these alleged actions reflected some bias on the part of the juror.[12] Absent any support in the record, and in light of the prosecutor's previous pretextual explanation concerning the juror's job history, we find these additional reasons to be unpersuasive.

(b) As for juror 12, the prosecutor first said that he struck him because he wore an earring. However, as noted by George, the final member selected to sit on the jury was a white male who also wore an earring. The prosecutor's explanation for that inconsistency was that he did not notice the white juror's earring until after he had selected him. Regardless, the prosecutor offered no explanation about how juror 12's earring was related to the case at hand or how it would render him unable to be a fair and impartial juror.[13]

Moreover, like the prosecutor's claim that juror 10 had an unstable employment history, the prosecutor's second purported reason for striking juror 12 — that his answers to the prosecutor's questions were unclear — is contradicted by the voir dire transcript. Below is the entirety of the prosecutor's questioning of juror 12.

---

[10] See *Gamble v. State*, 257 Ga. 325, 327 (5) (357 SE2d 792) (1987).

[11] See *Mallory v. State*, 261 Ga. 625, 636 (409 SE2d 839) (1991) (Benham, J., concurring) (nothing in record to support state's bald assertion that juror smiled at defense counsel).

[12] See *Parker v. State*, 219 Ga. App. 361, 363 (1) (464 SE2d 910) (1995) (prosecutor's explanations of strikes based on jurors' demeanor, including inattentiveness, without evidence of actual bias reflected unacceptable stereotypes that cannot justify peremptory strikes).

[13] See *Rector v. State*, 213 Ga. App. 450, 454 (2) (444 SE2d 862) (1994) (improper stereotyping where state failed to explain how prospective juror's gold tooth related to case).

Q. How are you doing?
A. All right.
Q. You work for DeKalb County?
A. Yes.
Q. As a paraprofessional?
A. Yes.
Q. And, what, do you work with particular schools or at the — ?
A. Basically behavior disorder students.
Q. Which — how many schools do you cover?
A. Just one school.
Q. What is that?
A. Excuse me?
Q. What school?
A. Margaret Harris.
Q. And so you assist with the behavior disorder students?
A. That's correct.
Q. How long have you done that?
A. Seven years.
Q. And where did you work before that?
A. I didn't.
Q. Did you go to school to become a paraprofessional? Did you go to college?
A. You take classes, yeah. I went to junior college for two years.
Q. What was the name?
A. George C. Wallace Community College.
Q. And one of your family members had been accused or arrested of a crime. Did you answer yes to that question?
A. One of my family members what?
Q. Accused or arrested of a crime?
A. A crime, no.
Q. But you had been a victim of a crime?
A. Yeah. Robbery, armed robbery.
Q. How long ago was that?
A. About three years ago or something.
Q. Did they find the person?
A. No.

We are hard-pressed to see how the answers given by juror 12 could be deemed unclear. On the contrary, his answers were perfectly clear and responsive to the prosecutor's questions. Once again, the prosecutor's articulated reason for striking an African-American male juror rests on a complete mischaracterization of what tran-

spired during voir dire. We are thus led to conclude the explanation was pretextual.

His final explanation for striking juror 12, that he could not establish a rapport with him, is also inadequate. The prosecutor's level of comfort or rapport with the juror is too vague, subjective, nonspecific, and noncase-related to meet the requirements of *Batson*.[14]

(c) The prosecutor's claims that he struck juror 17 because he was unemployed and because he said he was going to Panama City for a good time are supported by a literal reading of the transcript, although they do not fully reflect the juror's testimony. What the juror actually said is that he was not then working because he would soon be going to Panama City to have a good time with his relatives for spring break and that after his vacation he would be returning to Georgia State University to study telecommunications. Moreover, this juror testified at length that he would be likely to believe the testimony of police officers because all the officers he knows are honest.

In spite of the juror's propensity to believe law enforcement officers, a trait that prosecuting attorneys typically approve of in jurors, the prosecutor here still struck the juror. In contrast, the last juror seated on the jury, the white male who wore an earring and was an apparently unemployed Georgia State student, told the prosecutor that he has had several bad experiences with police officers, that he has known terrible cops, and that he has friends who have gone to prison for crimes they did not actually commit.

Considering the totality of the circumstances, including the prosecutor's pretextual explanations for striking previous African-American males from the jury, we find the prosecutor's alleged reasons for striking juror 17 to be suspect. The mere fact that the juror was not working because he planned to go on a family vacation prior to returning to college is, under all the circumstances, such an implausible basis for striking the juror that it rises to the level of being pretextual.

(d) The state's sole reason for striking juror 41, the desire to reach other jurors, also does not survive *Batson* scrutiny. "[A]lthough striking a particular juror in order to get to other jurors further down the list appears to be a race-neutral explanation, only in the context of application can we determine whether such an explanation is in fact racially-neutral."[15] For example, we have held that such an explanation was race-neutral where one of the jurors further down

---

[14] *Covin v. State*, 215 Ga. App. 3, 4 (449 SE2d 550) (1994).
[15] (Citation and punctuation omitted.) *Evans v. State*, 217 Ga. App. 589 (1) (458 SE2d 665) (1995).

the list that the attorney wanted to reach was also the same race and gender as the struck juror.[16]

In the instant case, however, none of the jurors whom the state wanted to reach after juror 41 were African-American males. Instead, there were two white males and one African-American female available, all of whom the state chose instead of juror 41. In the context of the entire jury selection, including the prosecutor's unacceptable nonracial explanations for striking other African-American male jurors, we find that the prosecutor's claim that he struck juror 41 in order to reach other jurors was not race-neutral, but was a mere pretext.

We are mindful that the trial court's findings are entitled to great deference and should not be overturned unless clearly errone-ous.[17] However, we are likewise mindful that we must not subvert the policy of *Batson* by acting as a rubber stamp and accepting all race-neutral explanations without question.[18] We hold that the trial court clearly erred in accepting without question the supposedly race-neutral explanations given by the state for striking jurors 10, 12, 17, and 41. Because of the state's *Batson* violations, we hereby reverse George's conviction and remand the case for a new trial.

*Judgment reversed. Eldridge and Mikell, JJ., concur.*

DECIDED OCTOBER 3, 2003.

*Ricky Morris*, for appellant.

*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Assistant District Attorney*, for appellee.

---

[16] Id. at 589-590 (1).

[17] *Lingo v. State*, 263 Ga. 664, 669 (1) (c) (437 SE2d 463) (1993).

[18] *Berry v. State*, 263 Ga. 493, 494 (435 SE2d 433) (1993).