## A08A1047. MCKENZIE v. THE STATE.
### (670 SE2d 158)

RUFFIN, Presiding Judge.

Following her trial, a Houston County jury found Sherronica Vo-Shay McKenzie guilty of voluntary manslaughter.[1] McKenzie appeals, claiming that the trial court erred (i) in denying her motion to suppress her in-custody statements to police, (ii) in allowing the admission of evidence of prior difficulties between McKenzie and the victim, (iii) in allowing the admission of similar transaction evidence, and (iv) in denying her challenge to the State's peremptory strikes of several potential jurors. She also contends that the evidence was insufficient to support her conviction. For reasons that follow, we find no merit in McKenzie's claims of error and affirm.

Viewed in a light most favorable to the jury's verdict,[2] the evidence shows that McKenzie and her husband became involved in a heated argument on the morning of March 5, 2005, at their Warner Robins home. McKenzie told him to "get his stuff and get out." According to the eyewitness testimony of McKenzie's 12-year-old son, after his stepfather called his mother a "bitch," she went into the kitchen and got a knife. She then began slapping her husband with one hand while holding the knife in the other. He responded by

---

[1] The jury also found McKenzie guilty of aggravated battery, but the trial court merged this count into her conviction for voluntary manslaughter. The jury found McKenzie not guilty of felony murder, possession of a knife during the commission of a crime, and cruelty to children.

[2] See *Brookshire v. State*, 288 Ga. App. 766 (655 SE2d 332) (2007).

hitting McKenzie in the face with his fist, causing her to fall down and drop the knife. McKenzie grabbed the knife, rose, and stabbed her husband in the chest. He died later that day. The medical examiner identified two stab wounds on the husband's body, one of which was fatal.

1. McKenzie claims that the trial court erred in denying her motion to suppress her in-custody statements to police. We disagree.

McKenzie's statements were "admissible if, considering the totality of the circumstances, they were made voluntarily, without being induced by hope of benefit or coerced by threats."[3] Further,

> [t]he [S]tate bears the burden of showing the voluntariness of a statement by a preponderance of the evidence. Factual and credibility determinations made by a trial judge after a voluntariness hearing must be accepted by appellate courts unless such determinations are clearly erroneous.[4]

The evidence presented at the motion hearing showed that McKenzie was taken into custody between 10:21 and 11:00 a.m. She was brought from booking into the interrogation room at 1:36 p.m., where an officer informed her that her husband had died. McKenzie became extremely upset, worried, and scared, but after about 30 minutes she calmed down and the officer decided to begin the interrogation. According to the interviewing officer, she understood the questions and was able to make coherent responses, and that at no time before or during the course of the interview did he threaten or coerce McKenzie to give a statement. The officer informed McKenzie of her *Miranda*[5] rights, and she signed a form acknowledging that she understood these rights and wished to talk with the officer.

McKenzie argues that because her interview was conducted while she was hysterical and distraught after being "abruptly and bluntly" informed that her husband had died, she could not have understood either her *Miranda* rights or the consequences of her statements and that her statements were therefore not voluntarily made. The trial court found, however, that McKenzie was not upset to the degree that it would render her statements involuntary. The court also concluded that the officer did not try to interview McKenzie while she was upset, that she signed the document explaining her *Miranda* rights, and that there was an absence of

---

[3] (Punctuation omitted.) *Vergara v. State*, 283 Ga. 175, 178 (1) (657 SE2d 863) (2008).

[4] (Footnotes omitted.) *Davenport v. State*, 277 Ga. App. 758, 760 (1) (627 SE2d 133) (2006).

[5] See *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

testimony indicating that her statement was made against her will. These findings are supported by the record, which authorized the trial court to conclude that McKenzie's statements were voluntarily made. It follows that the trial court did not err in denying McKenzie's motion to suppress her in-custody statements.[6]

2. McKenzie claims that the trial court erred in allowing evidence of her prior difficulties with her husband. We disagree.

> Evidence of the defendant's prior acts toward the victim, be it a prior assault, a quarrel, or a threat, is admissible when the defendant is accused of a criminal act against the victim, as the prior acts are evidence of the relationship between the victim and the defendant and may show the defendant's motive, intent, and bent of mind in committing the act against the victim which results in the charges for which the defendant is being prosecuted.[7]

Before and during the trial, McKenzie sought to exclude the testimony of her husband's friend, Billion Green, who observed an argument between McKenzie and the victim during which McKenzie cut her husband with a knife. The evidence was probative of McKenzie's bent of mind to assault her husband with a knife.[8] Thus, the trial court did not err in admitting the prior difficulty evidence.

3. McKenzie claims that the trial court erred in allowing evidence of a similar transaction. We disagree.

The trial court must conduct the hearing required by Uniform Superior Court Rule 31.3 (B) before evidence of an independent offense or act can be admitted into evidence.[9] The State must make three showings as to each independent offense or act: (1) that it seeks to introduce the evidence for an appropriate purpose and not to raise an improper inference as to the defendant's character; (2) that there is sufficient evidence to establish that the defendant committed the independent offense or act; and (3) that there is a sufficient connection or similarity between the independent offense or act and the crime charged so that proof of the former tends to prove the latter.[10]

---

[6] See *Etterle v. State*, 155 Ga. App. 210 (1) (270 SE2d 376) (1980) (trial court's determination that confession was freely and voluntarily given supported the evidence, notwithstanding testimony by appellants that they were, among other things, nervous, upset, and afraid).

[7] *Givens v. State*, 273 Ga. 818, 823 (4) (546 SE2d 509) (2001).

[8] See id.; *Cunningham v. State*, 243 Ga. App. 770, 771 (1) (533 SE2d 735) (2000) (prior difficulty evidence showing pattern of simple batteries against the victim admissible in trial for aggravated assault against the victim).

[9] See *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991).

[10] See id.

We review the trial court's admission of the similar transaction evidence for abuse of discretion.[11]

In this case, the State filed a pre-trial notice of its intent to present similar transaction evidence, specifically Green's testimony that McKenzie had threatened her with a knife. At the pre-trial hearing, Green testified that weeks before the victim's death, McKenzie had appeared in the doorway of Green's home with a knife and told Green that she "was going to be got." According to Green, McKenzie thought Green was having an affair with McKenzie's husband. After hearing this testimony, the trial court ruled that it would allow the similar transaction evidence for the limited purpose of showing bent of mind and course of conduct, consistent with the State's contention that it sought to introduce the evidence for this purpose.

McKenzie alleges that the State failed to establish the commission of the independent act by sufficient evidence and that the act was not logically connected to the charged crime. But Green's testimony, which was subject to cross-examination by defense counsel, was sufficient evidence to establish commission of the prior act, notwithstanding McKenzie's characterization of the testimony as both unverified and rambling.[12] Further, the prior act was sufficiently connected to the charged crime, particularly as it reflected upon McKenzie's relationship with her husband, as well as demonstrating her course of conduct in using a knife during confrontations.[13] The evidence was also introduced for a proper purpose.[14] Accordingly, the trial court did not abuse its discretion in allowing the similar transaction evidence.

4. McKenzie claims that the trial court erred in denying her *Batson*[15] challenge to the prosecutor's alleged intentional discrimination in striking potential jurors on the basis of their race and gender. Again, we disagree.

McKenzie is an African-American female. During the jury selection, she alleged intentional discrimination in the prosecutor's strikes of potential jurors on account of both their race and gender. The trial court ruled that McKenzie failed to make a prima facie showing of discrimination, but asked that the prosecutor state his reasons for each strike. The trial court subsequently found that the

---

[11] See *Sherrer v. State*, 289 Ga. App. 156, 157 (1) (656 SE2d 258) (2008).

[12] See *Clark v. State*, 279 Ga. 243, 246 (5) (611 SE2d 38) (2005) (similar transaction proved by testimony of a single witness).

[13] See *Boyd v. State*, 275 Ga. 237, 237-238 (2) (564 SE2d 185) (2002) (prior act probative of appellant's course of conduct and bent of mind in resolving disputes).

[14] See *Gardner v. State*, 273 Ga. 809, 810 (2) (546 SE2d 490) (2001).

[15] *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

proffered reasons were race- and gender-neutral, that they were not offered as a pretext for discriminatory intent, and that it would allow the strikes.

> The evaluation of a *Batson* challenge involves a three-step process: (1) the opponent of a peremptory challenge must make a prima facie showing of racial [or gender] discrimination; (2) the proponent of the strike must then provide a race [and gender]-neutral explanation for the strike; and (3) the court must decide whether the opponent of the strike has proven discriminatory intent. A trial court's finding as to whether the opponent of a strike has proven discriminatory intent is entitled to great deference and will not be disturbed unless clearly erroneous.[16]

In addition, "[a] trial court's determination of a *Batson* challenge rests largely upon assessment of the attorney's state of mind and credibility; it therefore lies peculiarly within a trial judge's province."[17]

Since the trial court ruled on the ultimate issue of intentional discrimination, its ruling as to the prima facie case is moot.[18] As to the second prong of the test, the trial court did not err in concluding that the prosecutor's proffered reasons for its strikes were race- and gender-neutral. Six of the prosecutor's eight strikes were used to exclude either African-Americans or females: four African-American females, one African-American male, and one white female.[19] The prosecutor's explanations as to its strikes of the four African-American females were, respectively, (i) "she was single, never answered a question"; (ii) "single," and based on certain statements made by the juror at a bench conference;[20] (iii) "single as well"; and (iv) "divorced, family members had been accused of multiple crimes and she said something about a domestic violence case where . . . the victim supposedly stabbed herself." The prosecutor's explanation for striking the African-American male was that he "was single and unemployed, also had a deposit account fraud conviction," and for the white female was that she "was a victim of domestic violence."[21] The prosecutor's explanations were race- and gender-neutral because they were not based "on a characteristic that is peculiar to any

---

[16] (Citation omitted.) *Flanders v. State*, 279 Ga. 35, 37 (2) (609 SE2d 346) (2005).

[17] (Punctuation omitted.) *Odom v. State*, 241 Ga. App. 361, 363 (2) (526 SE2d 646) (1999).

[18] See *Richard v. State*, 223 Ga. App. 98 (476 SE2d 849) (1996).

[19] The prosecutor also struck two white males because they were single.

[20] The transcript reports "inaudible" as to significant portions of the prosecutor's explanation with regard to the bench conference.

[21] The juror was divorced, but this was not mentioned by the prosecutor.

race or on a stereotypical belief."[22] The reasons proffered were also specific and related to the case, which involved an incident of domestic violence between a married couple.[23]

In the third prong of the test, the trial court was required to determine whether considering the totality of circumstances, McKenzie, as the opponent of the strikes, had shown that the prosecutor was motivated by discriminatory intent.[24] McKenzie argues that she carried her burden of persuasion because each of the potential jurors struck by the prosecutor was similarly situated to potential jurors of another race or gender who were not struck, but we conclude that the extent of the similarities suggested by McKenzie do not show clear error by the trial court.[25] Notably, McKenzie argues that although the prosecutor purported to strike jurors because they were single, the prosecutor was content to allow other single persons to sit on the jury. However, the trial court had asked the jurors to identify their marital status as "divorced, married, widowed, [or] single." The prosecutor struck all of the jurors who reported their marital status as single, including three African-American females, an African-American male, and two white males. On the other hand, the four potential jurors who McKenzie complains were similarly situated, who consisted of two white males and two white females, reported their marital status as divorced, not single. The prosecutor struck an African-American female and a white female who were also divorced, but the prosecutor struck these two potential jurors because they reported a connection to domestic violence, one as a victim and another through a family member. Accordingly, we are unpersuaded by McKenzie's argument.[26]

Also relevant to whether the prosecutor acted with discriminatory intent, the trial court noted that three African-Americans and

---

[22] *George v. State*, 263 Ga. App. 541, 544 (2) (588 SE2d 312) (2003). See *Herrin v. State*, 221 Ga. App. 356, 359 (471 SE2d 297) (1996) (prosecutor considered marriage and children in deciding strikes, and these reasons were not unconstitutional bases for excluding a potential juror).

[23] *George*, supra (strike proponent's explanations required to be race-neutral, case-related, clear, and reasonably specific).

[24] See id.

[25] See id. (opponent "may carry [her] burden of persuasion by showing that similarly situated jurors of another race [or gender] were not struck or that the proponent's race- [and gender-]neutral reason for a strike is so implausible or fantastic that it renders the explanation pretextual").

[26] More specifically, the record shows that two unmarried white females, jurors 14 and 22, and two unmarried white males, jurors 18 and 27, were not struck by the prosecutor. Jurors 14, 18, 22, and 27 were divorced. The two unmarried male jurors also had close ties to law enforcement and fire fighting, and were ultimately struck by the defense for this reason, while the unmarried white females served on the jury.

seven women were chosen to serve on the jury.[27] Given that the trial court was required to make an assessment of the prosecutor's credibility, that the reasons given by the prosecutor for the strikes were race- and gender-neutral, and that the trial court considered the totality of the circumstances in determining that the prosecutor did not proffer these reasons as a pretext for intentional discrimination, we conclude that the trial court did not clearly err in rejecting McKenzie's *Batson* challenge.

5. Lastly, McKenzie contends that the evidence was insufficient to support her conviction. We disagree. In light of the evidence, including her son's testimony that he saw his mother stab his stepfather in the chest with a knife, any rational trier of fact could have found her guilty beyond a reasonable doubt of voluntary manslaughter.[28]

*Judgment affirmed. Andrews and Bernes, JJ., concur.*

DECIDED NOVEMBER 5, 2008.

*Jeffrey L. Grube*, for appellant.
*Kelly R. Burke, District Attorney, Joshua D. Morrison, Assistant District Attorney*, for appellee.

---

[27] See *Barnes v. State*, 269 Ga. 345, 350 (6) (496 SE2d 674) (1998) (totality of the circumstances include the racial composition of the trial jury). According to the trial court's observations, there were ten African-Americans and eighteen females on the panel from which the jury and the alternate juror were chosen. The record shows that there were 37 members of this panel.

[28] See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).