## A09A1018. MAYBERRY v. THE STATE.
(687 SE2d 893)

ADAMS, Judge.

A jury convicted Roddrick D. Mayberry of kidnapping with bodily injury, aggravated assault, and two counts of aggravated sodomy. He appeals following the trial court's denial of his motion for new trial.

Viewed in the light most favorable to the verdict,[1] the evidence showed that on June 13, 2006, the victim went to the Mall of Georgia to pick up a birthday cake for her little brother's party. The parking lot was crowded and she had to park some distance from the mall. As she walked to the entrance, a man later identified as Mayberry drove up beside her in his car. He pointed what she thought was a gun and told her to get in the back of the car. The victim got into the car because she thought he had a weapon and that he would "possibly kill" her. Mayberry told her to lie down in the back, and he put a sweater over her head. He then drove her to his house.

Mayberry pulled into the garage and closed the door. He took the victim upstairs, and when he told her he wanted to have sex, she became frightened and began to panic. When the victim begged Mayberry not to rape her, he became so angry that he began to choke her and she briefly blacked out. After she regained consciousness, Mayberry forced her into the shower and then performed acts of oral and anal sex on her. Eventually, he put the sweater back over her face, led her back to the car and drove her back to a business near the mall where he let her out of the car.

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

The victim called her father and told him what had happened. When her father met her, he saw that she was injured and drove her to the emergency room ("ER"). The ER doctor observed a bruise under the victim's right eye, and multiple marks on her neck consistent with her having been choked. A sexual assault nurse examiner subsequently conducted an examination. The nurse not only observed the bruising on the victim's face and neck, she also observed a laceration and bruising around the victim's anus consistent with forced penetration.

The victim provided a description of the room in which she was attacked as well as a description of her attacker, and police circulated a sketch of the suspect around the mall and media outlets. Jessie Carter, who had worked with Mayberry at a mall coffee shop, notified police that the sketch looked like Mayberry. Police then constructed a photographic lineup, and the victim positively identified Mayberry as her attacker.

Police arrested Mayberry and obtained a search warrant for his house and for DNA samples. The Georgia Bureau of Investigation crime lab confirmed that fibers lifted from Mayberry's bedding were consistent with fibers lifted from the victim's clothing. Hair samples recovered from her clothing were submitted to DNA analysis, resulting in a finding that Mayberry could not be excluded as the contributor of those samples.

Mayberry testified that the victim and he had a prior acquaintance. He said they arranged to meet at the mall that day and drove back to his house where they attempted to have consensual sex, but stopped at the victim's request. His grandmother testified that she was home at the time of the attack, and did not hear any water running or anything unusual.

1. Mayberry first asserts that the trial court erred in overruling his *Batson*[2] challenge to the State's silent strike of Juror No. 22, the only black male of the 33 potential jurors interviewed who was the same race and sex as Mayberry.[3]

The evaluation of a *Batson* challenge involves a three-step

---

[2] *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

[3] Mayberry asserts on appeal that the State's strike of Juror No. 22 was neither race- nor gender-neutral. Although he mentioned the juror's gender in making his motion, his attorney did not argue gender as a specific ground at trial, and the judge did not address that issue in ruling on the motion. We note that "it is the duty of counsel to obtain a ruling on his motions or objections, and the failure to do so will ordinarily, as it does in this case, result in a waiver." (Citation and punctuation omitted.) *Evans v. State*, 288 Ga. App. 103, 107 (2) (653 SE2d 520) (2007). Accordingly, Mayberry waived the issue of gender under this enumeration, and we do not address it.

process: (1) the opponent of a peremptory challenge must make a prima facie showing of racial discrimination; (2) the proponent of the strike must then provide a race-neutral explanation for the strike; and (3) the court must decide whether the opponent of the strike has proven discriminatory intent.

(Citation omitted.) *Flanders v. State*, 279 Ga. 35, 37 (2) (609 SE2d 346) (2005). "In addition, a trial court's determination of a *Batson* challenge rests largely upon assessment of the attorney's state of mind and credibility; it therefore lies peculiarly within a trial judge's province." (Punctuation and footnote omitted.) *McKenzie v. State*, 294 Ga. App. 376, 380 (4) (670 SE2d 158) (2008). Accordingly, we will not reverse the trial court's ruling on a *Batson* motion absent clear error. *Carter v. State*, 249 Ga. App. 354, 356 (2) (548 SE2d 102) (2001).

The prosecutor first noted in response to Mayberry's motion that the State had not struck two black females on the panel, who were both chosen for the jury. The prosecutor explained that the State based its strike on Juror No. 22's responses to the defense's voir dire questions. Notably, the juror was one of several who indicated that he did not think it inappropriate for teens to have sex, and the prosecutor felt this made him an inappropriate juror in this case. The State's strike was also based upon the juror's experiences in interracial dating. Juror No. 22 stated that his current girlfriend was white. When asked whether the juror had any problems with "public perception" of that relationship, he replied that "[b]ack in college I had a situation where you get words and people say things. We were out at a park and some people — they kind of chased us a little bit, but other than that, stares." The prosecutor explained that she was concerned that the juror's "bad experience" with interracial dating may cause him to identify with the defense. Mayberry's defense asserted that the victim lied about the incident because her family would not approve of a consensual relationship with Mayberry. Defense counsel questioned the jurors about interracial relationships in connection with this defense, and the prosecution argued that it was entitled to rely upon Juror No. 22's answers to conclude that he was not an appropriate juror.[4]

Mayberry's attorney argued that these were not proper race-

---

[4] The prosecutor further noted that Juror No. 22 did not have a consistent employment record, and had several different jobs within a small amount of time. Although Mayberry asserts on appeal that this was not an accurate reflection of the juror's testimony, his attorneys did not contest this characterization at trial.

neutral reasons for striking Juror No. 22 because he was not the only person who indicated that he did not have a problem with teenage sex. Additionally, Mayberry noted that Juror No. 22 said his relationship with his white girlfriend was going well, and two other jurors indicated that they also had been involved in interracial relationships, one of whom testified that she had a bad experience in the relationship. Moreover, the incident of being chased was not that bad, as there was no indication of violence. But the prosecutor countered that the reason the other juror's interracial relationship was described as bad related to the personality of the other individual involved, while Juror No. 22 had experienced problems from outside perceptions. The State relied upon this distinction in striking the juror.

Considering the evidence and the totality of the circumstances, we find no clear error in the trial court's rejection of Mayberry's *Batson* challenge. See *McKenzie*, 294 Ga. App. at 380-381 (4).

2. Mayberry next asserts that the trial court erred in overruling his attorney's objection when the prosecutor cross-examined him about an incident in which Mayberry killed a man.[5] He argues that the prosecution cannot ask "questions as to unproved crimes or acts of violence, which are inflammatory, prejudicial, and suggestive of facts not in evidence."

"Whether to admit evidence is a matter that rests in the sound discretion of the trial court. Evidence that is relevant and material to an issue in the case is not made inadmissible because it incidentally places the defendant's character in issue." (Citation and punctuation omitted.) *Borders v. State*, 285 Ga. App. 337, 340 (2) (646 SE2d 319) (2007). During the State's case, Jessie Carter testified that Mayberry told her that in the past he carried a gun around with him and that it made him feel "tough" in his car. During cross-examination of Carter, Mayberry's attorney, Dennis Scheib, asked, "You did not have a conversation that he had [a gun] at his house at one time and some people broke into his house and he shot somebody?" The prosecutor subsequently cross-examined Mayberry about this shooting. At one point, the prosecutor directed Mayberry to limit his explanation of a previous answer to the shooting situation, and not to discuss what he told Carter. The prosecutor stated, "I'm asking you about what Scheib asked Jessie Carter about the situation in Atlanta where you killed someone." Mayberry's other lawyer objected, "Your Honor, I'm going to object. Mr. Scheib never said anything about murder.

---

[5] We note that at the hearing on the motion for new trial, Mayberry's appellate counsel asked to "respectfully withdraw" this argument as a ground for his motion. The trial court determined that it nonetheless needed to review the issue.

[The prosecution] brought this up, and [Mayberry] has the opportunity to explain."

The trial court noted, however, that the shooting was actually raised first by the defense. We agree that Scheib opened the door to this issue in his cross-examination of Carter.[6] "[Mayberry] sought to exclude further details concerning the same area of inquiry he had introduced. Yet, one cannot complain of a result he procured or aided in causing, and induced error is not an appropriate basis for claiming prejudice." (Citation and punctuation omitted.) *Borders*, 285 Ga. App. at 340-341 (2). Cf. *McGraw v. State*, 199 Ga. App. 389, 392 (5) (405 SE2d 53) (1991). We cannot say, therefore, that the trial court abused its discretion in overruling the objection.

3. Mayberry also contends that the trial court erred in overruling his objection when the prosecutor asked him, in connection with the same incident, "Well, actually Mr. Mayberry, wasn't this a drug deal gone bad?" His attorney objected to this question, stating "there is no evidence of that. This is just the prosecution —." The trial court interrupted to immediately instruct the jury that while counsel are entitled to cross-examine a witness, "questions of the attorneys are not evidence." Nevertheless, Mayberry argues that even with the court's instruction, the question was unduly prejudicial and improper.

We find that the trial court's jury instruction properly addressed the basis of Mayberry's stated objection, i.e., that the prosecutor's question raised facts not in evidence. Although the trial court interrupted Mayberry's objection to instruct the jury, Mayberry raised no further objection when the prosecutor re-stated the same question a short time later. "It is well settled that grounds which may be considered on appeal are limited to those which were raised at trial, and an objection on a specific ground at trial waives any objection to that evidence on other grounds on appeal." (Punctuation and footnote omitted.) *Seibert v. State*, 294 Ga. App. 202, 206 (2) (670 SE2d 109) (2008). We find no abuse of discretion.

4. Mayberry next makes a claim of ineffective assistance of counsel on a number of grounds. In order to establish a claim of ineffective assistance of counsel, Mayberry is required to show both that his counsel was deficient and that there was a reasonable probability that the outcome of the trial would have been different but for his counsel's deficiency. See *Strickland v. Washington*, 466

---

[6] To the extent that Mayberry's objection addressed the prosecution's attempt to limit Mayberry's explanation of his answers, we note that the trial court ruled that Mayberry could explain his answer, and the prosecutor asked Mayberry "to explain to the jury about that situation."

U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Braithwaite v. State*, 275 Ga. 884, 885 (2) (b) (572 SE2d 612) (2002). Mayberry's claim fails if he does not make either one of these showings. *Braithwaite*, 275 Ga. at 885 (2) (b). Moreover, Georgia courts recognize a strong presumption that trial counsel was effective, and we will uphold the trial court's determination of effective representation unless that determination was clearly erroneous. Id.; *Kania v. State*, 280 Ga. App. 356, 360 (5) (634 SE2d 146) (2006).

(a) Mayberry first points to attorney Scheib's cross-examination of Carter, which effectively opened the door to evidence of the prior shooting incident. Mayberry notes that Scheib asked about the shooting, even though he had made a motion in limine prior to trial to exclude any evidence of Mayberry's prior arrest record, and the trial court had granted that motion. At the hearing on the motion for new trial, Scheib testified that he was trying to demonstrate that Mayberry had gotten rid of his gun before the incident at issue because after an earlier home invasion and shooting, he did not want to own a gun anymore. Scheib conceded, however, that he asked one question too many in that regard, which was "tantamount to opening the door."

But "[t]he scope of cross-examination is grounded in trial tactics and strategy, and will rarely constitute ineffective assistance of counsel." (Citation and punctuation omitted.) *Daniels v. State*, 296 Ga. App. 795, 802 (5) (g) (676 SE2d 13) (2009). "[A]s a general rule, matters of reasonable trial tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel. A reviewing court evaluates trial counsel's performance from counsel's perspective at the time of trial[,]" not in hindsight. (Punctuation and footnote omitted.) *Smallwood v. State*, 296 Ga. App. 16, 23 (4) (b) (673 SE2d 537) (2009). Although Scheib believed in retrospect that he should not have asked about the shooting, the question was part of a strategy to discredit Carter's statement that Mayberry owned a gun. Additionally, Mayberry was allowed to explain the circumstances surrounding the shooting. He testified that it arose out of a home invasion and he was never indicted in connection with the incident. Although he was arrested, all charges were dropped. Accordingly, because we cannot say that Scheib's strategy was "patently unreasonable," Mayberry cannot establish that his counsel was ineffective on this ground. Id. "Trial tactics, however mistaken they may appear with hindsight, are almost never adequate grounds for finding trial counsel to have been ineffective so as to overturn a conviction." (Footnote omitted.) Id. See also *Gonzales v. State*, 286 Ga. App. 821, 826-827 (3) (b), (c) (650 SE2d 401) (2007).

Moreover, Mayberry was indicted in this case on a charge of assault with a handgun and a charge of possession of a firearm

during the commission of a felony. The jury acquitted him of both charges. Thus he was acquitted of the only gun-related charges in the case. The State argued at the motion hearing, and the trial court agreed, that the acquittals demonstrated that Scheib's strategy actually worked. We find no clear error in the trial court's denial of the motion for new trial on this ground.

(b) For the same reason we find that Mayberry cannot establish a claim of ineffective counsel on the ground that his other attorney compounded Scheib's error when, as noted in Division 2 above, she used the word "murder" in objecting to the State's cross-examination. Although the attorney believed in hindsight that her choice of words was a mistake and "probably just poured salt in the wound," she said she did not remember saying it until she read the transcript because "everything was happening so quickly."

While counsel may regret her choice of words, it appears that she was trying to limit the scope of the cross-examination by objecting to the fact that Scheib's prior question just referenced the fact that Mayberry had shot someone, not that he had killed someone. We find that her objection was part of a reasonable trial strategy to limit the State's cross-examination on the shooting and does not support a claim of ineffective assistance of counsel.

(c) Mayberry also asserts that his trial counsel should have objected to the prosecutor's "compound" question asking whether police "found some handwritten sexually violent lyrics" in his car. He argues that the prosecutor did not show him the lyrics to allow him to determine if they were his or if they were of a sexually violent nature and his counsel should have objected on the ground that the lyrics were the best evidence of their content. Mayberry contends that this evidence impermissibly placed his character into evidence

Scheib testified that he did not object because he did not believe the question was objectionable as the lyrics were found in the car when Mayberry was arrested and he was charged with a sexual violation. Although Scheib conceded that the lyrics themselves would have been the best evidence, he stated that he was not sure the question necessarily placed Mayberry's character in a bad light.

Pretermitting whether a best evidence objection had merit, Mayberry's argument on this ground fails because he cannot show prejudice. He failed to prove that if his attorney had made the objection, the State could not have introduced the original lyrics. Additionally, Mayberry explained to the jury that he had only seen a photograph of the lyrics in question, and that he could not read the words from the photograph. Therefore, he could not say whether the lyrics belonged to him or one of his friends. In any event, Mayberry admitted that he listened to music with sexually violent lyrics, but explained "it's just a song." We find, therefore, that Mayberry

cannot "demonstrate a reasonable probability that, but for counsel's failure to assert a best evidence rule objection, the trial's result would have been different." (Citation and punctuation omitted.) *Garrett v. State*, 285 Ga. App. 282, 287 (5) (c) (645 SE2d 718) (2007).

(d) Mayberry further argues that his counsel should have objected when the prosecutor asked him on cross-examination, "and when the police came to your house and arrested you, you didn't even ask them why they were there, did you, because you knew why they were there; isn't that right, Mr. Mayberry?" He asserts that this question amounted to an improper comment on his silence in violation of his constitutional rights. Neither of his trial attorneys recalled that question nor why they did not object, but both indicated in hindsight that it was probably objectionable.

In criminal cases, comments upon a defendant's silence or failure to come forward are not allowed, even where the defendant had not yet received a *Miranda* warning. *Reynolds v. State*, 285 Ga. 70, 71 (673 SE2d 854) (2009); *Mallory v. State*, 261 Ga. 625, 630 (5) (409 SE2d 839) (1991), overruled on other grounds, *Clark v. State*, 271 Ga. 6, 9-10 (5) (515 SE2d 155) (1999). Nevertheless,

> [i]mproper reference to a defendant's silence does not automatically require reversal or mandate a finding of ineffective assistance of counsel. [Mayberry] still must prove that, but for defense counsel's failure to object to the . . . cross-examination, there is a reasonable probability that the outcome of his trial would have been different. It is not enough for [Mayberry] to show that the error had some conceivable effect on the outcome of the proceedings.

(Citations and punctuation omitted.) *Hines v. State*, 277 Ga. App. 404, 408-409 (2) (626 SE2d 601) (2006). See also *Whitaker v. State*, 283 Ga. 521, 524 (3) (661 SE2d 557) (2008); *Hill v. State*, 250 Ga. 277, 283 (4) (a) (295 SE2d 518) (1982). "The determination of harmful error must be made on a case by case basis, taking into consideration the facts, the trial context of the error, and the prejudice created thereby as juxtaposed with the strength of the evidence of the defendant's guilt." (Footnote omitted.) *Bruce v. State*, 268 Ga. App. 677, 683 (2) (603 SE2d 33) (2004). See also *Binns v. State*, 296 Ga. App. 537, 539-540 (2) (675 SE2d 265) (2009).

The trial judge did not believe that the question constituted an improper comment on Mayberry's silence, but even if it was, he deemed it "simply a passing reference" during an otherwise lengthy cross-examination, which reference was "incidental at best." The judge was therefore "satisfied that [an objection] would not have changed the outcome of the case." We agree. Even if the question

HALL LAW LIBRARY

raised an inference regarding Mayberry's silence, the prosecution did not follow up on the question, nor did it capitalize on it in its closing argument to the jury. Therefore,

> [p]retermitting whether the State prosecutor's question constituted an improper comment on his right to remain silent, [Mayberry] has not demonstrated that there was a reasonable probability that but for his counsel's failure to object, his trial would have ended differently. Indeed, this isolated reference to his silence was not raised again nor argued in closing argument. Thus, there was no focus on [Mayberry's] silence sufficient to constitute prejudicial error. We conclude that no prejudice resulted from trial counsel's failure to raise a Fifth Amendment objection.

(Citations, punctuation and footnotes omitted.) *Kurtz v. State*, 287 Ga. App. 823, 826-827 (2) (652 SE2d 858) (2007). See also *Lampley v. State*, 284 Ga. 37, 38-39 (2) (a), (b) (663 SE2d 184) (2008). Compare *Grissom v. State*, 300 Ga. App. 593 (685 SE2d 492) (2009) (reversing conviction where prosecutor repeatedly questioned defendant, over objection, about his silence and improperly commented upon it in closing argument); *Reynolds v. State*, 300 Ga. App. 353 (685 SE2d 346) (2009) (conviction reversed where defense counsel failed to object to improper comment in closing argument regarding defendant's silence). Accordingly, we find no clear error in the trial court's denial of Mayberry's claim of ineffective assistance of counsel on this basis.

5. Mayberry contends that the State withheld exculpatory evidence that it introduced at the sentencing hearing, which prevented him from having a fair trial. He further argues that even if the State was unaware of this evidence at trial, it should qualify as newly discovered evidence necessitating a new trial under the factors set out in *Timberlake v. State*, 246 Ga. 488, 491 (1) (271 SE2d 792) (1980).

At sentencing, the prosecutor read a victim impact statement in which the victim said that after the incident, she had to go to a specialist for rectal bleeding. She explained, "After numerous doctor's visits, they determined that I had low platelets causing me to bruise easily, fatigue and heavy nosebleeds from stress." Mayberry argues that if the jurors had been aware of the victim's medical condition, it may have impacted the verdict.

But Mayberry fails to establish that the State was aware of the victim's medical condition and withheld it from him. The prosecutor represented that she first became aware of this information on the morning of the sentencing hearing when she received the victim's

statement. This is supported by the victim's statement that she was not diagnosed with "low platelets" until after the incident. Moreover, because we agree with the trial court that Mayberry cannot establish the required factors under *Timberlake*, he is not entitled to a new trial on this ground.

6. Mayberry also argues that the trial court erred in sentencing him for both aggravated assault and kidnapping with bodily injury as the two crimes merged. The indictment alleged kidnapping with bodily injury (OCGA § 16-5-40) "in that the accused . . . did . . . unlawfully abduct [the victim] . . . hold [her] against her will, and said person did receive bodily injury, to wit: bruising about the face and neck. . . ." The indictment alleged aggravated assault (OCGA § 16-5-21) in that the accused "did . . . unlawfully make an assault upon [the victim] with an object, to wit: his hands . . . by choking said victim. . . ." Mayberry asserts that both crimes relied upon proof that he choked the victim and this one action could not support both crimes. He notes that while the victim testified that he choked her, she did not testify at trial that he struck her in the face.

"Kidnapping with bodily injury only requires that an injury, no matter how slight, occur during the kidnapping." (Citation and punctuation omitted.) *Phillips v. State*, 284 Ga. App. 683, 685 (1) (b) (644 SE2d 535) (2007). Even though the victim did not testify at trial that the defendant struck her, there was at least some evidence to support such a conclusion. The ER doctor testified that when he noticed bruising on the victim's face, he "vaguely" recalled her saying that she may have been struck in the eye or struck below the eye, but he did not write it down. And the evidence at trial showed that she had bruising not just on her neck, but also on her face. This evidence was sufficient to support the charge of kidnapping, apart from the evidence of choking. Id. See also *Stubbs v. State*, 220 Ga. App. 106, 108 (2) (469 SE2d 229) (1996) (defendant guilty of kidnapping with bodily injury even where he did not intend and did not directly inflict injury).

But even if both charges relied upon evidence of choking, they are not subject to merger if each of the offenses requires proof of an additional fact which the other does not. See *Drinkard v. Walker*, 281 Ga. 211, 214-217 (636 SE2d 530) (2006) (adopting the "required evidence" test for determining when one crime is included in another under OCGA § 16-1-6 (1), and overruling cases inconsistent with that test). Kidnapping required proof of asportation, holding the victim against her will, and bodily injury, which was not required to prove aggravated assault. Aggravated assault as charged in this case required proof that the victim used his hands, with either the intent to cause a violent injury or which placed the victim in reasonable fear of receiving a violent injury. The kidnapping charge

did not require such proof. Because each of the two crimes at issue requires proof of at least one fact which the other does not and the State provided such proof, the crimes do not merge, and the trial court correctly sentenced Mayberry for both offenses.

*Judgment affirmed. Blackburn, P. J., and Doyle, J., concur.*

DECIDED NOVEMBER 23, 2009 —
RECONSIDERATION DENIED DECEMBER 10, 2009 — 

*Wayne L. Burnaine*, for appellant.

*Daniel J. Porter, District Attorney, Tracie H. Cason, Assistant District Attorney*, for appellee.